■ HAZEL W. FRENCH, Respondent, v. BANCO NACIONAL DE CUBA, Appellant.— Judgment affirmed, with $50 costs and disbursements to the respondent. A fair question of fact was presented to the trial court as to whether the directives of the Currency Stabilization Fund had the force of law and also whether they were acts of the sovereign government of Cuba. The defendant had the burden of proof on these issues. The finding by the trial court that the defendant failed to sustain such burden should not be disturbed on the record before us. Concur — McNally, Stevens and Capozzoli, JJ.; Breitel, J. P., and Steuer, J., dissent in the following memorandum by Steuer, J.: In 1957 the plaintiff's assignor (hereinafter plaintiff) an American citizen, decided to operate a farm in Cuba. For this purpose he had to bring into Cuba foreign money (that is, money foreign to Cuba) to make his investment. At this time the Cuban law had certain provisions designed to make the investment of foreign capital attractive to the nationals of other countries. These were contained in Law Decree No. 548, promulgated November 20, 1952, by the Council of Ministers and approved by the President. It provided for the deposit and recording of foreign capital imported into the country for certain specified purposes and for the export of such capital or the proceeds thereof without tax. Authorization was given to the Currency Stabilization Fund * to enact directives necessary to enforce the law, and the National Bank of Cuba was authorized to issue any supplementary rules required for a strict compliance. Pursuant to this law, plaintiff brought into Cuba $345,000 in United States funds. This money was registered with the Currency Stabilization Fund, which issued certificates stating that the depositor will receive from National Bank of Cuba a check for the dollar amount payable in New York on delivery of the equivalent amount of Cuban pesos and surrender of the certificates. On or about December 11, 1959, plaintiff presented to defendant eight certificates calling for a total of $150,000, tendered the equivalent amount of pesos, and demanded checks in accord with the certificates. The demand was refused. It further appears that on July 15, 1959, the Currency Stabilization Fund issued its Decision No. 346, pursuant to the authority given it by Law Decree 548, suspending the processing of certificates issued under the decree. On these facts Trial Term, after a nonjury trial, awarded judgment to the plaintiff for the amount of the certificates' plus interest. Trial Term reached this conclusion upon the following reasoning: that the certificates constituted a contractual obligation of the defendant; that in assuming this obligation the defendant was not performing a governmental function so as to be entitled to sovereign

---

* This body is sometimes referred to as "The Monetary Stabilization Fund."

immunity; and that Decision 346 was not lawfully promulgated. This last finding made it unnecessary to decide whether a decree to that effect — which abrogated a contractual obligation — could be effective. We agree that in this context defendant does not enjoy sovereign immunity. We will further assume that Law Decree 2199 which was promulgated on August 6, 1957, made the certificates a contractual obligation of the Currency Stabilization Fund and that defendant was directed to fulfill this obligation. However, at no time was the Fund deprived of its power to make directives in regard to the exportation of foreign currencies previously imported pursuant to Decree 548. Trial Term's conclusion that Decision 346 was improperly promulgated was based on two findings. The court had some doubt that all of the details of promulgation had been complied with, but was chiefly influenced by the thought that it conflicted with the fundamental law of Cuba in that it retroactively annulled a contract obligation. Neither of these grounds is available to attack the decree. The courts of this State may not inquire whether the law in question transgresses Cuban fundamental law in the method of its promulgation or in its repulsiveness to the basic law (*Banco de Espana* v. *Federal Reserve Bank*, 114 F. 2d 438, 443 et seq.; *Earn Line S. S. Co.* v. *Sutherland S. S. Co.*, 254 F. 126, affd. sub nom. *The Claveresk*, 264 F. 276). Very often the validity of a foreign law and the validity of acts done pursuant to that law are questions that are inextricably mingled. Here the Currency Stabilization Fund was indisputably an arm of the Cuban government, clothed with certain law-making powers. That it purported to act in regard to the certificates in suit is not disputed. Nor is it disputed that such acts took place wholly in Cuba. " So long as the act is the act of the foreign sovereign, it matters not how grossly the sovereign has transgressed its own laws " (*Banco de Espana* v. *Federal Reserve Bank*, supra, p. 444). The directive suspended the processing of certificates. Without the certificates plaintiff would have no right of recovery. It matters not that the issuance of the directive transgressed Cuban law, if it, in fact, did. The effect was that the authorized body suspended any rights of exportation, and that act cannot be questioned here. The judgment should be vacated and the complaint dismissed on the facts and the law with costs and disbursements to appellant.